# EXHIBIT 3

1  CHAD GREESON (SBN 251928)
   LITTLER MENDELSON P.C.
2  Treat Towers, Suite 600
   1255 Treat Boulevard
3  Walnut Creek, CA 94597
   Telephone: (925) 932-2468
4  Email: cgreeson@littler.com

5

6  Attorneys for Defendant
   T-MOBILE USA, INC.

7

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11  RYAN DIAZ, an individual, and on behalf of     Case No. 2:25-cv-02933-CSK
    all others similarly situated,
12                                                  [*Removed from Sacramento Superior Court,*
                    Plaintiff,                      *Case No. 25cv019618*]
13
            v.                                      **DECLARATION OF AARON**
14                                                  **WESTLAKE IN SUPPORT OF**
    T-MOBILE USA, INC., a corporation, and          **DEFENDANT'S MEMORANDUM OF**
15  DOES 1 through 50, inclusive,                   **POINTS AND AUTHORITIES IN**
                                                    **SUPPORT OF ITS MOTION TO**
16                  Defendants.                     **COMPEL ARBITRATION**

17                                                  [28 U.S.C. §§ 1332, 1441 & 1446]

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

CASE NO. 2:25-cv-02933-CSK

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Docusign Envelope ID: 8B0BBD29-EB1B-4164-B333-64D3F1129FCB

I, Aaron Westlake, do hereby swear, affirm and attest as follows:

1.     I am over the age of eighteen and have personal knowledge of the facts set forth herein or obtained these facts through competent and reliable personnel employed by Fidelity Brokerage Services, LLC and its affiliates. The matters stated herein are based on my own personal knowledge and/or review of records regularly kept in the normal course of business and created at or near the time of the events recorded in them.

2.     I am currently employed by Fidelity Brokerage Services LLC, in the role of Vice President, Managing Director and have held this position since March 17, 2014, dedicated to Fidelity Workplace Services LLC ("Fidelity"), which is the service provider for the equity compensation plan for T-Mobile USA, Inc. ("T-Mobile"). As a result of my responsibilities, I am familiar with the services Fidelity provides and the records it keeps in the normal course of business pertaining to participants in the T-Mobile USA Plan sponsored by T-Mobile. In my position as Managing Director, I am knowledgeable about the processes in supporting T-Mobile Restricted Stock Units offered to employees, access to the website portal from Fidelity, and the digital and other documentary records Fidelity maintains in the ordinary course of business relating to these employees and the reports prepared and transmitted to our clients, including T-Mobile.

3.     Fidelity maintains a website portal ("NetBenefits") to which participants in the T-Mobile Plan have login access, and where various documents, including fund information, legally required notices, and account specific information is available. Once an employee is onboarded through T-Mobile, Fidelity is provided information to allow the participant to register for an account through NetBenefits site. To register, participants must provide their first and last name, date of birth, and last 4 digits of their social security number, which Fidelity verifies against the information provided by T-Mobile. If the information does not match, the individual cannot create an account. If the information matches, the participant must then create a self-chosen username and password. The participant then has access to the NetBenefits site. Participants are able to log into the NetBenefits site at any time using their self-chosen username and password. Attached

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

hereto as **Exhibit 1**, and illustrated below, is the Registration Screen for a participant for NetBenefits.



Attached hereto as **Exhibit 2**, and illustrated below, is the NetBenefits Login Page, which is what any participant would view prior to logging into NetBenefits.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Docusign Envelope ID: 8B0BBD29-EB1B-4164-B333-64D3F1129FCB

4.     On Sunday, February 25, 2024, the Mutual Agreement to Arbitrate and other RSU-related documents were made available to T-Mobile employees via NetBenefits. Once an employee logged into NetBenefits, employees could navigate to and access the grant offer page using an "Alert" banner at the top of the page. The "Alert" banner stated: "Action Required: You've got a stock grant waiting for you! Accept your stock grant(s) today!" In addition, employees could navigate to and access the grant offer by expanding a Quick Link and clicking "Grant Documents." The Quick Link is the series of three stacked dots next to "T-Mobile RSU" under "Stock Plan" on the NetBenefits landing page shown below and attached as **Exhibit 3**. The Alert banner can also be seen near the top of the page.



LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

CASE NO. *25-cv-02933-CSK*

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Docusign Envelope ID: 8B0BBD29-EB1B-4164-B333-64D3F1129FCB

5. Once the offer page is accessed through the "Alert" banner or the "Quick Link," participants are shown the "offer page" of NetBenefits. This page listed RSU Awards and the Mutual Agreement to Arbitrate that a participant can accept or decline, including those made available in February 2024. The website instructed employees to: "Read these 3 documents from your company to accept your award." Participants can then click to review the "Grant Agreement", "Plan Document", and "Mutual Agreement to Arbitrate" as separate PDF documents in this section. Employees could accept or decline the documents at the bottom of the page. There was no restriction on how much time a participant has to review the documents on the screen (other than the employee must act no later than the first vest date, which is August 25, 2024, for the February 24 award).

6. Upon a participant clicking the Mutual Agreement to Arbitrate PDF link, a full-size view of the entire agreement is displayed for the participant to review on a separate, pop-out window screen. In the space below the Mutual Agreement to Arbitrate link, the following is provided: "This Agreement requires final and binding arbitration of claims/disputes arising out of your employment relationship with T-Mobile. PLEASE READ IT CAREFULLY." In addition, below the three documents is a notice that states: "By clicking 'Accept my award', I confirm that I have opened, read, understand, and agree to the documents above, including the Mutual Agreement to Arbitrate. I understand those documents award me certain Restricted Stock Units and require me to resolve certain claims/disputes arising from my employment relationship with T-Mobile individually before an arbitrator, not a court or jury."

7. Participants can elect to accept the documents and award(s) by selecting "Accept your award" button on the screen or can decline the documents and award(s) by selecting "Decline award" button on the screen. Attached hereto as **Exhibit 4**, and illustrated below, is a true and correct copy of the Accepting Your Awards page in NetBenefits.

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

Docusign Envelope ID: 8B0BBD29-EB1B-4164-B333-64D3F1129FCB



8.      Once the participant clicks the "Accept your award" button at the bottom of the screen, a record is created of the acceptance date and time and that information is electronically stamped at the bottom of the Mutual Agreement to Arbitrate for each participant who clicks "Accept your award." Fidelity also stamps an individual's accepted Mutual Agreement to Arbitrate and Grant Agreement with a unique alphanumeric ID code attributable only to that participant's acceptance of those documents. Fidelity maintains the documentation for each participant who accepts the award.

CASE NO. *25-cv-02933-CSK*

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

Docusign Envelope ID: 8B0BBD29-EB1B-4164-B333-64D3F1129FCB

9. As part of Mr. Diaz's acceptance of the RSU Award, Mr. Diaz received a grant of seven (7) RSUs. The unique identifier assigned to Ryan Diaz was 08D7HN32.

10. After selecting "Accept your award" another screen loads. While on this screen, the participant can again access, open, and review the Mutual Arbitration Agreement as a separated PDF and in a separate screen, as well as the "Grant Agreement" and "Plan Document." All documents are located for the participant employee to access at any time upon logging into NetBenefits after accepting the award, and there is no restriction on how often or for how long an employee can view their accepted documents. Attached hereto as **Exhibit 5** is a true and correct copy of the screen after a participant accepts the award.



11. Attached as **Exhibits A** and **B** to the Declaration of Aftab Ibrahim are true and correct copies of the Mutual Agreement to Arbitrate and RSU Grant Notice for Ryan

7

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

Docusign Envelope ID: 8B0BBD29-EB1B-4164-B333-64D3F1129FCB

Diaz bearing the electronic stamp of the date and time that he clicked "Accept my award" confirming that he read and agreed to the terms of the Mutual Agreement to Arbitrate and the other grant documents. These are the same documents maintained in the records Fidelity maintains in the ordinary course of business relating to this participant.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 17 day of December 2025, at Folsom, California.

Signed by:

Aaron Westlake

DF4E8B086CA64A3...

Aaron Westlake

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
916.830.7200

CASE NO. *25-cv-02933-CSK*

DECLARATION OF AARON WESTLAKE IN SUPPORT OF DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

# EXHIBIT 1

**New User Registration**



Terms of Use | Privacy | Security | Accessibility

© 1998-2024 FMR LLC. All Rights Reserved.
By using this website, you consent to the use of cookies as described here. However, if you do not agree to our cookies policy, you can change your cookie settings at any time.
Fidelity Brokerage Services LLC, Member NYSE, SIPC, 900 Salem Street, Smithfield, RI 02917

# EXHIBIT 2

**NetBenefits Login – T-Mobile**





## Log In

Manage My Log In

Username [_____] ❓

☐ Remember Me

Password [_____] ❓

**Log In**

| NetBenefits U.S. Employees | NetBenefits Worldwide Global or Non-U.S. Employees |

**New User?**
- Register Now

**Need Help?**
- Having trouble with your username or password?
- Frequently Asked Questions
- 🔒 Online Security

## Welcome to NetBenefits!

© 1996-2024 FMR LLC. All rights reserved.

By using or logging in to this Website, you consent to the use of cookies as described in Fidelity's Privacy Policy.

Fidelity Brokerage Services LLC, Member NYSE, SIPC, 900 Salem Street, Smithfield, RI 02917

NetBenefits Technical Help  |  Terms of Use  |  Privacy  |  The Fidelity Customer Protection Guarantee  |  Security

# EXHIBIT 3

**Restricted Stock Award Page**



**T Mobile**   Search 🔍

T-MOBILE USA, INC.   💬   ⊙   | Log out

Home    Accounts & Benefits    Plan & Learn

---

🌿 Your portfolio

$

Balance as of 04/04/2024  View investments

Set goals, track your progress, and
take control. View Planning Summary

### You have 2 notifications below

⚠️ Action Required: You've got a stock grant waiting for you! Accept your stock grant(s) today.   ›

⚠️ Add Beneficiaries to Your Workplace Savings Plan: An important part of your plan for the future may be missing.   ›

### Your accounts and benefits

Name and hide accounts

**Retirement savings**

T-MOBILE USA, INC. 401(K)
RETIREMENT SAVINGS
PLAN & TRUST
401(k):09047                                    ⋮

**Stock plans**

T-MOBILE RSU
Restricted Stock Units                           ⋮

T-MOBILE ESPP
Employee Stock Purchase                          ⋮

**Investment accounts**

INDIVIDUAL                        $

**Take action**

#### Estimate your retirement income based on age and current savings

Estimate does not include Social Security and assumes significantly below average market conditions. Learn more about our Methodology and Assumptions ⬈

Retirement age
⊖  67  ⊕

Potential income
**$573**/mo

Enter your current annual salary, and we can give you a more accurate view of your retirement income and help you plan.

$ _____   Update salary

---

(?)

**Measure your financial wellness**

See how you're doing in five critical areas and make a plan to improve.

Get started

---

**T-MOBILE USA, INC. 401(K) RETIREMENT...**

YTD   1Y   3Y

$125,000
$100,000
$75,000
$50,000

Jan-2022   Jan-2023   Jan-2024

# EXHIBIT 4

**Accept Your Award Page**



T-MOBILE USA, INC.

## Accepting your awards   What's this?

### You have 1 award to accept

The documents provided below (including prospectuses, plan descriptions and other information) are from your company, which is solely responsible for their contents. Fidelity, as your company's record keeper, does not prepare or review these documents and is not soliciting, offering, or acting as an underwriter for your company's securities or financial instruments. Please open and read each of these documents. Contact your company if you have any questions.

⌄ RSUBB2YR23                                    Hide documents
T-MOBILE RSU

Award issued 02/26/2024 | Units awarded 19.000

Vesting Schedule

**Read these 3 documents from your company to accept your award**

Grant Agreement (PDF)                                      ○
The Grant Agreement is a legal document that outlines the terms and conditions of your grant. Please direct any questions about this agreement to your plan administrator.

Plan Document (PDF)                                        ○
The Plan Document details the terms of the plan and its administration. Please direct any questions about this Plan Document to your plan administrator.

Mutual Agreement to Arbitrate (PDF)                        ○
This Agreement requires final and binding arbitration of claims/disputes arising out of your employment relationship with T-Mobile. PLEASE READ IT CAREFULLY.

By clicking "Accept your award", I confirm that I have opened, read, understand, and agree to the documents above, including the Mutual Agreement to Arbitrate. I understand those documents award me certain Restricted Stock Units and require me to resolve certain claims/disputes arising from my employment relationship with T-Mobile individually before an arbitrator, not a court or jury.

**Accept your award**

Decline award

Exit

Important Information

© 1998-2024 FMR LLC.   All rights reserved.

Terms of Use | Privacy | Security | Contact Us | Accessibility | Disclosures

# EXHIBIT 5

**After the Grant is Accepted**

## Accepting your awards  What's this?

## You have no more awards to accept!

The documents provided below (including prospectuses, plan descriptions and other information) are from your company, which is solely responsible for their contents. Fidelity, as your company's record keeper, does not prepare or review these documents and is not soliciting, offering, or acting as an underwriter for your company's securities or financial instruments. Please open and read each of these documents. Contact your company if you have any questions.



T-MOBILE RSU

Acceptance Confirmation |                | Award issued 02/25/2024 |

Units awarded

Vesting Schedule

**Read these 3 documents from your company to accept your award**

Grant Agreement(PDF)

The Grant Agreement is a legal document that outlines the terms and conditions of your grant. Please direct any questions about this agreement to your plan administrator.

Plan Document(PDF)

The Plan Document details the terms of the plan and its administration. Please direct any questions about this Plan Document to your plan administrator.

Mutual Agreement to Arbitrate(PDF)

This Agreement requires final and binding arbitration of claims/disputes arising out of your employment relationship with T-Mobile. PLEASE READ IT CAREFULLY.

provided, that the Company reasonably believes the delay will not result in the imposition of excise taxes under Section 409A.

## ARTICLE IV.
## TAXATION AND TAX WITHHOLDING

4.1    Representation.  Participant represents to the Company that Participant has reviewed with Participant's own tax advisors the tax consequences of the RSUs and the transactions contemplated by the Grant Notice and this Agreement.  Participant is relying solely on such advisors and not on any statements or representations of the Company or any of its Affiliates or their respective agents.

4.2    Tax Withholding.

(a)    Subject to Section 4.2(b) below and Section 9.5 of the Plan, the Company will have the authority and the right to deduct or withhold, or require Participant to remit to the Company, an amount sufficient to satisfy all federal, state, local and foreign taxes required by Applicable Law to be withheld in connection with the vesting or settlement of the RSUs or any other taxable event related to the RSUs, including, without limitation, the authority to deduct such amounts from other compensation payable to Participant by the Company.

(b)    Unless the Company otherwise determines, the Company shall withhold, or cause to be withheld, in satisfaction of any applicable withholding tax obligations and in accordance with Section 9.5 of the Plan, a number of Shares otherwise issuable upon settlement of the RSUs having a fair market value not exceeding the aggregate amount of such withholding tax liabilities based on the minimum individual statutory withholding rates in Participant's applicable jurisdictions for federal, state, local and foreign income tax and payroll tax purposes that are applicable to such taxable income.

(c)    Participant acknowledges that Participant is ultimately liable and responsible for all taxes owed in connection with the RSUs, regardless of any action the Company or any Affiliate takes with respect to any tax withholding obligations that arise in connection with the RSUs.  Neither the Company nor any Affiliate makes any representation or undertaking regarding the treatment of any tax withholding in connection with the grant, vesting or payment of the RSUs or the subsequent sale of Shares. The Company and its Affiliates do not commit and are under no obligation to structure the RSUs to reduce or eliminate Participant's tax liability.

## ARTICLE V.
## OTHER PROVISIONS

5.1    Adjustments.  Participant acknowledges that the RSUs and the Shares subject to the RSUs are subject to adjustment, modification and termination in certain events as provided in this Agreement and the Plan.

5.2    Clawback.  The RSUs and the Shares issuable hereunder shall be subject to any clawback or recoupment policy in effect on the Grant Date or as may be adopted or maintained by the Company following the Grant Date, including, without limitation, the Company's Amended and Restated Executive Incentive Compensation Recoupment Policy.

5.3    Notices.  Any notice to be given under the terms of this Agreement to the Company must be in writing and addressed to the Company in care of the Company's Head of Stock Compensation at the Company's principal office or the Head of Stock Compensation's then-current email address or facsimile number.  Any notice to be given under the terms of this Agreement to Participant must be in writing and

addressed to Participant (or, if Participant is then deceased, to the Designated Beneficiary) at Participant's last known mailing address, email address or facsimile number in the Company's personnel files. By a notice given pursuant to this Section, either party may designate a different address for notices to be given to that party. Any notice will be deemed duly given when actually received, when sent by email, when sent by certified mail (return receipt requested) and deposited with postage prepaid in a post office or branch post office regularly maintained by the United States Postal Service, when delivered by a nationally recognized express shipping company or upon receipt of a facsimile transmission confirmation.

5.4     <u>Dispute Resolution Procedure</u>. Any and all claims and disputes regarding and/or arising out of or related to the RSUs, the Grant Notice, the Plan, or this Agreement shall be resolved under any *Mutual Agreement to Arbitrate* or other applicable arbitration agreement ("Arbitration Agreement") between Company and Participant. However, nothing herein shall be construed to reduce or eliminate the deference to the Plan Administrator that would otherwise be required prior to, or as part of a claim in court, procedurally or substantively.

5.5     <u>Venue</u>. If there is no Arbitration Agreement between Company and Participant or such Arbitration Agreement is inapplicable, any legal or equitable action or any proceeding arising directly, indirectly, or otherwise in connection with, out of, related to or from the Grant Notice or this Agreement, or any provision thereof or hereof, shall exclusively be filed and adjudicated in King County, Washington and no other venue.

5.6     <u>Conformity to Securities Laws</u>. Participant acknowledges that the Plan, the Grant Notice and this Agreement are intended to conform to the extent necessary with all Applicable Laws and, to the extent Applicable Laws permit, will be deemed amended as necessary to conform to Applicable Laws.

5.7     <u>Successors and Assigns</u>. The Company may assign any of its rights under this Agreement to single or multiple assignees, and this Agreement will inure to the benefit of the successors and assigns of the Company. Subject to the restrictions on transfer set forth in this Agreement or the Plan, this Agreement will be binding upon and inure to the benefit of the heirs, legatees, legal representatives, successors and assigns of the parties hereto.

5.8     <u>Limitations Applicable to Section 16 Persons</u>. Notwithstanding any other provision of the Plan or this Agreement, if Participant is subject to Section 16 of the Exchange Act, the Plan, the Grant Notice, this Agreement and the RSUs will be subject to any additional limitations set forth in any applicable exemptive rule under Section 16 of the Exchange Act (including any amendment to Rule 16b-3) that are requirements for the application of such exemptive rule. To the extent Applicable Laws permit, this Agreement will be deemed amended as necessary to conform to such applicable exemptive rule.

5.9     <u>Entire Agreement; Amendment</u>. The Plan, the Grant Notice and this Agreement (including any exhibit hereto) constitute the entire agreement of the parties and supersede in their entirety all prior undertakings and agreements of the Company and Participant with respect to the subject matter hereof. To the extent permitted by the Plan, the Grant Notice and this Agreement may be wholly or partially amended or otherwise modified, suspended or terminated at any time or from time to time by the Administrator or the Board; provided, however, that except as may otherwise be provided by the Plan, no amendment, modification, suspension or termination of this Agreement shall materially and adversely affect the RSUs or without the written consent of Participant.

5.10     <u>Severability</u>. If any portion of the Grant Notice or this Agreement or any action taken under the Grant Notice or this Agreement, in any case is held illegal or invalid for any reason, the illegality or invalidity will not affect the remaining parts of the Grant Notice and/or this Agreement (as applicable),

and the Grant Notice and/or this Agreement (as applicable) will be construed and enforced as if the illegal or invalid provisions had been excluded, and the illegal or invalid action will be null and void.

      5.11    <u>Limitation on Participant's Rights</u>.  Participation in the Plan confers no rights or interests other than as herein provided.  This Agreement creates only a contractual obligation on the part of the Company as to amounts payable and may not be construed as creating a trust.  Neither the Plan nor any underlying program, in and of itself, has any assets.  Participant will have only the rights of a general unsecured creditor of the Company with respect to amounts credited and benefits payable, if any, with respect to the RSUs, and rights no greater than the right to receive cash or the Shares as a general unsecured creditor with respect to the RSUs, as and when settled pursuant to the terms of this Agreement.

      5.12    <u>Not a Contract of Employment or Service</u>.  Nothing in the Plan, the Grant Notice or this Agreement confers upon Participant any right to continue in the employ or service of the Company or its Affiliate or interferes with or restricts in any way the rights of the Company and its Affiliates, which rights are hereby expressly reserved, to discharge or terminate the services of Participant at any time for any reason whatsoever, with or without Cause, except to the extent expressly provided otherwise in a written agreement between the Company or an Affiliate and Participant.

      5.13    <u>Counterparts</u>.  The Grant Notice may be executed in one or more counterparts, including by way of any electronic signature, subject to Applicable Law, each of which will be deemed an original and all of which together will constitute one instrument.

      5.14    <u>Governing Law</u>.  The Grant Notice and this Agreement will be governed by and interpreted in accordance with the laws of the State of Delaware, disregarding any state's choice-of-law principles requiring the application of a jurisdiction's laws other than the State of Delaware.

      5.15    <u>Section 409A</u>.

      (a)    This Agreement shall be interpreted in accordance with the requirements of Section 409A.  Notwithstanding any provision of this Agreement, the Company may adopt such amendments to this Agreement or adopt other policies and procedures (including amendments, policies and procedures with retroactive effect), or take any other actions, that the Administrator determines are necessary or appropriate to avoid the imposition of taxes under Section 409A, provided, however, that this Section 5.14 shall not create an obligation on the part of the Company to adopt any such amendment, policy or procedure or take any such other action, nor shall the Company have any liability for failing to do so. To the extent that any payment window spans two calendar years, Participant shall have no discretion over or ability to control the actual year in which payment is made.

      (b)    Notwithstanding anything to the contrary in this Agreement, no amounts that constitute "non-qualified deferred compensation" (within the meaning of Section 409A) shall be paid to Participant under this Agreement during the six (6)-month period following Participant's "separation from service" to the extent that the Administrator determines that Participant is a "specified employee" (each within the meaning of Section 409A) at the time of such separation from service and that paying such amounts at the time or times indicated in this Agreement would be a prohibited distribution under Section 409A(a)(2)(b)(i). If the payment of any such amounts is delayed as a result of the previous sentence, then on the first business day following the end of such six (6)-month period (or such earlier date upon which such amount can be paid under Section 409A without being subject to such additional taxes), the Company shall pay to Participant in a lump-sum all amounts that would have otherwise been payable to Participant during such six (6)-month period under this Agreement.

5.16    <u>Titles</u>.  Titles are provided herein for convenience only and are not to serve as a basis for interpretation or construction of this Agreement.

\* \* \* \* \*

O6A94LTM
02/26/2024 03:33 PM U.S. Eastern Standard Time
ACCEPTED