CHAD GREESON (SBN 251928)
LITTLER MENDELSON P.C.
Treat Towers, Suite 600
1255 Treat Boulevard
Walnut Creek, CA 94597
Telephone: (925) 932-2468
Email: cgreeson@littler.com

Matthew J. Ruza [admitted *Pro Hac Vice*]
mruza@littler.com
Yara Mroueh [admitted *Pro Hac Vice*]
ymroueh@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, Illinois 60654
Telephone: 312.372.5520
Facsimile: 312.372.7880

Attorneys for Defendant
T-MOBILE USA, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DIAZ, an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC., a corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:25-cv-02933-CSK<br><br>[*Removed from Sacramento Superior Court, Case No. 25cv019618*]<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS CLASS CLAIMS** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................. 1

II. ARGUMENT ......................................................................................... 2

    A. Plaintiff Manifestly Assented to the Agreement. ........................... 2

        i. Mutual Assent Is Not Disrupted By Including The Arbitration Agreement In Plaintiff's RSU Award. .............. 3

        ii. Plaintiff's evidentiary quibbles miss the mark. .................... 5

    B. The Court Should Not Address Plaintiffs' Unconscionability Arguments Because Plaintiff Fails to Challenge the Parties' Delegation Clause. ........................................................................ 5

    C. Even If This Court Considers Plaintiff's Unconscionability Challenges To The Agreement, They Fail As A Matter Of Law. ................................................................................................ 8

        i. The Arbitration Agreement Is Not Procedurally Unconscionable. ................................................................... 8

        ii. The Arbitration Agreement Is Not Substantively Unconscionable. ................................................................... 9

III. CONCLUSION ................................................................................... 12

LITTLER MENDELSON, P.C.
1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
925.932.2468

CASE NO. 25-cv-02933-CSK
DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS CLASS CLAIMS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aniel v. GMAC Mortg., LLC*,
   No. C 12-04201 ......................................................................................................... 5

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ............................................................................. 1, 2, 3, 4

*Bielski v. Coinbase, Inc.*,
   87 F. 4th 1003 (9th Cir. 2023) ................................................................................... 8

*Caremark, LLC v. Chickasaw Nation*,
   43 F.4th 1021 (9th Cir. 2022) ............................................................................ 1, 7, 12

*Carrasco v. T-Mobile, USA, Inc.*,
   Case No. 24CU025147C (San Diego Cnty. Superior Court) .............................. 7

*Flores v. Freedom Mortgage Corp.*,
   2:24-CV-03981-ODW, 2024 WL 5713605 (C.D. Cal. Nov. 1, 2024) ................. 4

*Gomez v. T-Mobile USA, Inc.*,
   2025 WL 1642280 (W.D. Wash. June 10, 2025) ....................................... 2, 7, 8

*Grant v. T-Mobile USA, Inc.*,
   2024 WL 3510937 (W.D. Wash. July 23, 2024) .................................................. 2

*Heckman v. Live Nation Ent., Inc.*,
   120 F.4th 670 (9th Cir. 2024) ............................................................................ 9, 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) ................................................................................................ 6, 12

*Holley-Gallegly v. TA Operating, LLC*,
   74 F.4th 997 (9th Cir. 2023) ............................................................................ 1, 6, 7, 11

*Jones v. Starz Ent., LLC*,
   129 F.4th 1176 (9th Cir. 2025) ........................................................................... 9, 11

*Kohler v. Whaleco, Inc.*,
   757 F. Supp. 3d 1112 (S.D. Cal. 2024) .............................................................. 9

LITTLER MENDELSON, P.C.
1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
925.932.2468

*Lakisha Grant v. T-Mobile USA, Inc.*,
   Case No. 2:23-cv-01946 (W.D. Wash.)................................................................7

*Lee v. DoNotPay, Inc.*,
   683 F. Supp. 3d 1062 (C.D. Cal. 2023) ..........................................................3, 4

*Lenett v. Clear Channel Outdoor, Inc.*,
   2025 WL 2369220 (C.D. Cal. July 29, 2025).......................................................8

*Lincoln v. MX Technologies, Inc.*,
   2024 WL 3274831 (E.D. Cal. July 2, 2024).........................................................3

*McGrath v. DoorDash, Inc.*,
   2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ..................................................9, 11

*Murphy v. Confirm ID, Inc.*,
   2025 WL 603598 (E.D. Cal. Feb. 25, 2025) .......................................................3

*Olvin Gomez v. T-Mobile USA, Inc.*,
   Case No. 2:24-cv-01468-BJR (W.D. Wash.) .......................................................7

*Pandolfi v. AviaGames, Inc.*,
   2025 WL 2463742 (9th Cir. 2025) ....................................................................10

*Ramirez v. Charter Commc'ns, Inc.*,
   16 Cal. 5th 478 (2023) ......................................................................................12

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015) ........................................................................................4

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) ........................................................................1, 2, 3

*State Farm Mut. Auto. Ins. Co. v. Penske Truck Leasing Co., L.P.*,
   No. 20-55893, 2021 WL 4810642 (9th Cir. Oct. 15, 2021) ..............................10

*Steven Joseph v. Sea World LLC*,
   2026 WL 40901 (S.D. Cal. Jan. 6, 2026) .........................................................12

*Tercero v. Sacramento Logistics LLC*,
   2025 WL 43125 (E.D. Cal. Jan. 7, 2025) .........................................................12

*Vo v. Tech. Credit Union*,
   108 Cal. App. 5th 632 (2023) ...........................................................................12

**Statutes**

9 U.S.C. ...................................................................................................................................12

9 U.S.C. § 2 .................................................................................................................................5

Federal Arbitration Act ................................................................................................................8

## I. INTRODUCTION

Plaintiff Ryan Diaz ("Plaintiff") does not dispute that he clicked "**Accept your award**" on Fidelity's NetBenefits platform after being told—in bold, conspicuous text on the very screen containing the Mutual Agreement to Arbitrate—that by doing so he "agree[d] to the documents above, including the Mutual Agreement to Arbitrate" and that those documents "require [him] to resolve certain claims/disputes arising from [his] employment relationship with T-Mobile individually before an arbitrator, not a court or jury." (Westlake Decl. ¶¶ 5–7 & Ex. 4; Ibrahim Decl. ¶¶ 5–7 & Ex. A.). **Plaintiff admits he signed the Mutual Agreement to Arbitrate his claims against T-Mobile.** This undisputed record forecloses Plaintiff's "embedded terms" theory and defeats his argument that he did not "mutually assent" to the terms of the Arbitration Agreement.

Unlike the deficient interfaces in Plaintiff's cited cases, T-Mobile's acceptance screen provided conspicuous notice, clear terms, and an unambiguous manifestation of assent—at the moment of acceptance—that Plaintiff would arbitrate the very claims he asserts here. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–58 (9th Cir. 2022); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30–35 (2d Cir. 2002). The Court need go no further: the Agreement delegates all enforcement questions to the arbitrator, and Plaintiff does not challenge that delegation clause. (Dkt. 18, Ibrahim Decl., Ex. 1, at ¶ 1 ("Arbitrator … shall have exclusive authority to resolve any dispute relating to the … enforceability" of the Agreement"); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1024 (9th Cir. 2022). Plaintiff's attempt to repackage complaints about "mass arbitration" or discovery limits as a delegation challenge fails because he never explains—because he cannot—how any provision outside the delegation clause makes the fact of an arbitrator deciding arbitrability unconscionable. *See Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023).

Even if the Court were to reach Plaintiff's unconscionability theories (which it should not given the delegation clause), they fail for lack of both procedural and substantive showings. Specifically, neither the Mass Arbitration Demand Procedures nor the discovery

procedures set forth in the Arbitration Agreement are unconscionable. And in all events, the Agreement contains a severability clause that preserves enforcement of the parties' core promise to arbitrate on an individual basis. (Dkt. 18-1, Ibrahim Decl., at Ex. 1, ¶ 4).

Consistent with multiple courts that have already enforced this same 2024 Agreement—including its delegation clause—the Court should compel individual arbitration and dismiss the class allegations. *See Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at 4–7 (W.D. Wash. July 23, 2024); *Gomez v. T-Mobile USA, Inc.*, 2025 WL 1642280, at 2–4 (W.D. Wash. June 10, 2025); *Carrasco v. T-Mobile USA, Inc.*, No. 24CU025147C (San Diego Cnty. Super. Ct. July 18, 2025) (minute order).

## II. ARGUMENT

### A.   Plaintiff Manifestly Assented to the Agreement.

Plaintiff's opening argument can be summarized as follows: Plaintiff claims that his Mutual Agreement to Arbitrate with T-Mobile lacks formation and is procedurally unconscionable because he failed to read all of the electronic documents presented to him when he was presented with his RSU Award, even though it included a conspicuous Arbitration Agreement. The Ninth Circuit's online-assent framework asks whether (1) the interface provided reasonably conspicuous notice of the contractual terms, and (2) the user took an action that unambiguously manifested assent. *Berman*, 30 F.4th at 856–58; *Specht*, 306 F.3d at 30–35. Here, both are satisfied by the record.

First, the Mutual Agreement to Arbitrate appeared as a standalone, clickable PDF alongside the RSU Grant Agreement and Plan Document, and the page twice instructed employees to read the Arbitration Agreement carefully, including in bold/all-caps:

> "This Agreement requires final and binding arbitration of claims/disputes arising out of your employment relationship with T-Mobile. **PLEASE READ IT CAREFULLY.**" (Westlake Decl. ¶¶ 5–6 & Ex. 4; Ibrahim Decl. ¶ 5.)

Directly above the button Plaintiff clicked, the page stated: "By clicking 'Accept your award,' I confirm that I have opened, read, understand, and agree to the documents above, **including the Mutual Agreement to Arbitrate … and understand those documents …**

LITTLER MENDELSON, P.C.
1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
925.932.2468

**require me to resolve … claims … individually before an arbitrator, not a court or jury."** (Westlake Decl. ¶ 6 (emphasis added); *see also* ¶ 7; Ibrahim Decl. ¶¶ 6–7 & Ex. A.) (emphasis added). Plaintiff then clicked "Accept your award" and received a unique electronic acceptance stamp (O8D7HN32) on March 1, 2024, at 12:58 p.m. EST. (Dkt. 18, Westlake Decl., at Ex. 4; Ibrahim Decl., at ¶ 6). Plaintiff's Opposition does not dispute that Plaintiff clicked "Accept your award" on March 1, 2024.

This is exactly what *Berman* requires and exactly what *Berman* found missing: a proximate, plainly worded disclosure that clicking the button signifies agreement to the hyperlinked terms, followed by the user's click. 30 F.4th at 856–58. Unlike the deficient designs in *Berman* and *Specht*, the NetBenefits screen (1) displayed the arbitration agreement as a separate, clickable PDF; (2) explained in bold/all-caps that it requires final and binding employment arbitration; and (3) told the user that clicking "Accept your award" constitutes agreement to the arbitration agreement and to individual arbitration, on that very page. In fact, federal courts across California, including this district, have found similar electronic mutual agreements to arbitrate enforceable and mutual assent achieved. *See Murphy v. Confirm ID, Inc.,* 2025 WL 603598, at *7 (E.D. Cal. Feb. 25, 2025); *Lincoln v. MX Technologies, Inc.*, 2024 WL 3274831, at *3 (E.D. Cal. July 2, 2024) ("Defendant's notice clearly states what action the user must take to manifest assent to the agreement 'By clicking continue…'"); *Lee v. DoNotPay, Inc.,* 683 F. Supp. 3d 1062, 1071 (C.D. Cal. 2023) (Customer unambiguously assented to administrative task assistance service's hyperlinked terms and conditions, including an agreement to arbitrate claims, by clicking the large pink button marked "Continue" on service's sign-up screen, as required for an enforceable agreement to exist under California law).

Because Plaintiff does not dispute that he clicked "Accept your award" and because the undisputed records confirm that he did, the Court should find that Plaintiff expressly and knowingly assented to arbitration.

      **i.   Mutual Assent Is Not Disrupted By Including The Arbitration Agreement In Plaintiff's RSU Award.**

1    Plaintiff's suggestion that presenting the Arbitration Agreement within the RSU
2 acceptance flow demonstrates a lack of mutual assent is unsupported by the facts or the
3 law. The acceptance page expressly disclosed that the RSU "award" included the Mutual
4 Agreement to Arbitrate, and it told Plaintiff—immediately above the button he clicked—
5 that by selecting "Accept your award," he was agreeing to that Agreement and to individual
6 arbitration of employment claims. (Dkt. 18, at *5-6). The same page provided a parallel
7 "Decline Award" option, making clear Plaintiff had a meaningful choice at the point of
8 acceptance. *Id*. He chose to accept and then received the benefit of his bargain—one RSU
9 share valued at $198.58 on August 27, 2024, and two RSU shares valued at $541.08 on
10 February 27, 2025, as additional and not legally required consideration (in addition to the
11 mutual promises, which are adequate consideration under California law). (Dkt. 18. at *6,
12 Ibrahim Decl., at ¶ 7.)

13    Moreover, California law does not require the arbitration agreement to be presented
14 in a separate, freestanding process or highlighted beyond clear disclosure for formation to
15 occur – even though it was here. To the contrary, the California Supreme Court has rejected
16 any special-presentation requirement, expressly holding that employers have no obligation
17 to "highlight" arbitration provisions when the interface clearly communicates the terms
18 and the user affirmatively assents. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899,
19 914 (2015). Here, the Arbitration Agreement was a **standalone, clickable PDF**, repeatedly
20 described in plain language and all-caps/bold text, and expressly tied to the acceptance
21 click—the very design *Berman* identifies as sufficient. *See Berman*, 30 F. 4th at 853. Indeed,
22 T-Mobile's notice is *more conspicuous* than that in *Berman*, both on the grounds of the
23 actual size, color, and location of the text, as well as in the content of the notice. (Dkt. 18,
24 at *6, Westlake Decl., at Ex. 4; Ibrahim Decl., at ¶ 7). Thus, the analogies to *Berman* are
25 unconvincing.

26    Finally, Plaintiff's "mid-employment" framing does not negate formation. There is
27 no requirement that parties only enter into employment arbitration agreements at the
28 inception of employment. *See Flores v. Freedom Mortgage Corp*., 2:24-CV-03981-ODW

LITTLER MENDELSON, P.C.
1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
925.932.2468

4    CASE NO. *25-cv-02933-CSK*
DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
AND DISMISS CLASS CLAIMS

(MARX), 2024 WL 5713605, at *5 (C.D. Cal. Nov. 1, 2024) (granting employer's motion to compel arbitration, noting that "[u]nder California law, when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement," and finding persuasive "ample evidence" introduced by employer that plaintiff "accessed, reviewed, and acknowledged the Arbitration Agreement.") (internal quotation marks omitted). Here, Defendant presented the Arbitration Agreement to Plaintiff and provided him with time to review, the terms were clearly communicated, and Plaintiff had the option to accept or reject the Agreement. Plaintiff accepted the Agreement and received consideration (here, the mutual promises to arbitrate, continued employment, and the RSUs). 9 U.S.C. § 2. The undisputed record reflects clear disclosure, a choice to accept or decline, and actual acceptance with benefits conferred. That confirms formation—not the opposite.

### ii. Plaintiff's evidentiary quibbles miss the mark.

Plaintiff's attempt to question the Ibrahim declaration fails. Personal knowledge may be established through a review of business records. *See, e.g.*, *Aniel v. GMAC Mortg., LLC*, No. C 12-04201 SBA, 2012 WL 5373388, at *6 (N.D. Cal. Oct. 30, 2012) ("Personal knowledge … is not strictly limited to activities in which the declarant has personally participated," and "an affiant may testify to acts that she did not personally observe but which have been described in business records"). Mr. Ibrahim lays foundation based on personal knowledge and business records maintained, and to which he has access to, in the ordinary course of business.

Accordingly, Plaintiff assented to the Agreement, and the Court should reject Plaintiff's challenges to mutual assent to the Arbitration Agreement.

### B. The Court Should Not Address Plaintiffs' Unconscionability Arguments Because Plaintiff Fails to Challenge the Parties' Delegation Clause.

Where the parties "clearly and unmistakably" delegate threshold issues, courts must honor that agreement and cannot decide threshold issues like unconscionability.

*Rent-A-Center*, 561 U.S. at 68–72 (delegation clause is severable and enforceable absent a specific challenge to the clause); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–69 (2019) (no "wholly groundless" exception—courts must send arbitrability to the arbitrator where delegation exists). Here, the Parties' Agreement states that the "**Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the scope, interpretation, applicability, enforceability, or waiver of this Agreement**." (Ibrahim Decl., Ex. 1 § 1 (emphasis added).) That language is the quintessential clear-and-unmistakable delegation clause. *See, e.g., Rent-A-Center*, 561 U.S. at 68–72 (similar language enforced). Plaintiff therefore bears the burden to specifically challenge the delegation clause. *Rent-A-Center*, 561 U.S. at 68–72. In the Ninth Circuit, if a party cites provisions outside the delegation clause to argue unconscionability, it "must explain how those provisions make the fact of an arbitrator deciding arbitrability unconscionable." *Holley-Gallegly,* 74 F.4th at 1002.

Here, Plaintiff does not mount a specific attack on the delegation clause. Instead, he first claims that a neutral arbitrator deciding arbitrability creates any unfairness about who decides arbitrability. That makes no sense because, under an arbitration agreement with a delegation clause, a neutral arbitrator decides gateway issues, not the court.[1]

Next, Plaintiff claims that the Agreement's Mass Arbitration Demands ("MAD") Procedures render the delegation clause unconscionable. But here again, Plaintiff fails to directly tie the MAD to the delegation clause, thus rendering any "challenge" inadequate. Moreover, because Section 9's staging features are expressly severable (as described in further detail below), any defect would simply be severed and the arbitrations would proceed in the ordinary course—confirming that Plaintiff's quarrel is with an ancillary case-management term, not the delegation clause. Under *Rent-A-Center* and *Holley Gallegly*, such agreement-wide complaints must be presented to the arbitrator absent a specific showing that having the arbitrator decide arbitrability is itself unconscionable

---

[1] Plaintiff also asserts that the delegation clause is unenforceable because the Agreement as a whole lacks mutual assent. That is not a challenge to the delegation clause, and as discussed above, the parties clearly manifested mutual ascent.

(which Plaintiff has not made). *See Rent-A-Center*, 561 U.S. at 68–72; *Holley Gallegly*, 74 F.4th at 1002.

Finally, Plaintiff asserts that the delegation clause is unconscionable because the Agreement reserves to the court only limited issues (*e.g.*, disputes concerning the Class and Collective Action Waiver and California PAGA individual-action requirement). (Ibrahim Decl., Ex. 1 §9.) That limited carve-out for a few specified issues does not undermine delegation – it confirms it. By expressly reserving only those narrow topics for the Court (*e.g.*, issues tied to the Class/Collective Action Waiver and California's PAGA's individual action requirement), the Agreement necessarily delegates all other threshold arbitrability questions – such as formation, unconscionability, and scope – to the arbitrator. *See Brennan*, 796 F.3d at 1130; *Caremark*, 43 F.4th at 1024 (court resolves formation, then enforces delegation for remaining gateway issues).

Courts have repeatedly rejected similar attempts to challenge the delegation clause by merely challenging the Agreement as a whole or provisions unrelated to the delegation clause. *See Lakisha Grant v. T-Mobile USA, Inc.,* Case No. 2:23-cv-01946 (W.D. Wash.); *Olvin Gomez v. T-Mobile USA, Inc.,* Case No. 2:24-cv-01468-BJR (W.D. Wash.); and *Carrasco v. T-Mobile, USA, Inc.,* Case No. 24CU025147C (San Diego Cnty. Superior Court). For example, *Gomez* dismissed a similar "challenge" to the delegation provision. In *Gomez*, the Plaintiff raised several attacks on the arbitration agreement as a whole. He argued that T-Mobile fraudulently induced him to accept the agreement by omitting its existence from the RSU materials, breached its own contractual duty of good faith by hiding the agreement in a third-party website, and that the agreement was procedurally and substantively unconscionable because it was dense, adhesive, and contained MAD Procedures. The Court originally held – and reconfirmed after a Motion for Reconsideration – that these arguments were legally insufficient because each challenge was directed at the agreement as a whole or at provisions unrelated to delegation and thus did not constitute a "specific challenge" to the delegation clause. The Court made clear that where a plaintiff makes arguments challenging the "*arbitration clause* [and] . . . not the to

the *delegation clause*—a distinct and, under the Federal Arbitration Act, severable provision", the plaintiff fails to adequately challenge the delegation provision under *Rent-A-Center,* and the delegation clause must be deemed enforceable. *See Gomez,* 2025 WL 3684175, at *3 (W.D. Wash. Feb. 19, 2025). Just as in *Gomez*, Plaintiff fails to adequately challenge the delegation clause and, therefore, it must be enforced.

Because Plaintiff fails to challenge the delegation clause, the Court should end its analysis and compel the case, including any gateway issues such as unconscionability, to arbitration.

### C. Even If This Court Considers Plaintiff's Unconscionability Challenges To The Agreement, They Fail As A Matter Of Law.

#### i. The Arbitration Agreement Is Not Procedurally Unconscionable.

Plaintiff's claim of procedural unconscionability based on the Arbitration Agreement being "embedded" in a mid-employment stock award process is meritless. First, there is no basis to suggest the Agreement was oppressive or surprising and, as detailed above, Defendant clearly and unmistakenly provided notice of the Agreement. Courts routinely enforce mid-employment arbitration agreements, and such timing does not constitute procedural unconscionability. *See Lenett v. Clear Channel Outdoor, Inc.*, 2025 WL 2369220, at *3 (C.D. Cal. July 29, 2025) (finding implied assent where employee received clear notice and continued employment).

Second, Plaintiff's assertion that employees were not required to "separately sign, initial, or affirmatively acknowledge" the Agreement misstates the record and the law. The Agreement was a standalone, clickable PDF, repeatedly described in plain language and bold text, and expressly tied to the acceptance click. The Ninth Circuit has held that such interfaces are enforceable and not procedurally unconscionable. *See Bielski v. Coinbase, Inc.*, 87 F. 4th 1003, 1014 (9th Cir. 2023) (finding arbitration agreement lacked "oppression and surprise" where the agreement is clearly presented," "written in plain language," and written "in a legible-sized font.").

Finally, Plaintiff's argument that the Agreement was unconscionable because he

could not "opt out" is contradicted by the facts. On the same page where Plaintiff clicked "Accept Award," he could have declined the award entirely, making clear he had a meaningful choice. He accepted—and received substantial compensation for doing so. (Dkt. 18 at *6; Ibrahim Decl. ¶ 7). That is the opposite of procedural unfairness.

### ii. The Arbitration Agreement Is Not Substantively Unconscionable.

Plaintiff's two challenges regarding substantive unconscionability also fail.

### 1. The MAD Procedures Are Proper and Fully Enforceable.

Plaintiff claims that the Mass Arbitration Demand ("MAD") procedures—which are not even at issue in his case—render the entire Agreement unconscionable. Not so.

The MAD procedures in Section 9 merely sequences the filing and administration of mass individual arbitrations to ensure case management – when dozens or hundreds of similar cases are filed simultaneously – while expressly preserving individualized hearings, individualized remedies, and tolling limitations periods for all claimants. (Ibrahim Decl., Ex. 1, at ¶ 9). They do not aggregate claims, create binding bellwethers, impact the limitations period, or deprive any claimant of an individualized arbitration.

Courts – including the Ninth Circuit – routinely uphold mass-claim protocols that stage or batch the administration of individual claims where, as here, individualized adjudication is preserved. *See Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1182 (9th Cir. 2025) (distinguishing *Heckman* and upholding staged mass-claim procedures that did not bind non-test claimants); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1128–29 (S.D. Cal. 2024). Section 9 fits squarely within that lineage: it permits additional claims to proceed after the first 50, in sequence, with tolling protection. (Ibrahim Decl., Ex. 1, at ¶ 9). Courts have likewise rejected speculative assertions of "delay," finding similar mass-arbitration protocols fair and efficient. *See McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *10 & n.7 (N.D. Cal. Nov. 5, 2020) (granting DoorDash's motion to compel arbitration over the plaintiffs' objection that the Mass-Claims Protocol was unfair, finding no "significant delay in resolution of the Dashers' claims," because the initial batch of 10

cases would be decided within 120 days, followed by 90-day mediation period, and the terms were fair because (1) test cases were chosen randomly; (2) claimants had a greater role in selecting the arbitrator; and (3) the respondent paid the mediation fees).

Once Section 9 of the Arbitration Agreement is correctly understood, Plaintiff's unconscionability argument collapses. Plaintiff cherry-picks language from Section 9 to argue that the Arbitration Agreement is substantively unconscionable because it supposedly permits "nonconsensual aggregation of claims from different plaintiffs" and imposes improper "staging" requirements. But that argument depends entirely on a distorted, out-of-context reading of the provision. When Section 9 is construed as a whole—as it must be—it is clear that the Agreement does not authorize any forced aggregation and that its phased-proceeding framework is a standard, reasonable case-management mechanism that courts routinely uphold. And, as shown above, the procedures preserve individualized arbitration and merely stage filings – nothing even remotely akin to the features criticized in *Heckman* and *Pandolfi*. His reliance on *Pandolfi* is also misplaced for the additional reason that the decision is unpublished and nonprecedential. *See State Farm Mut. Auto. Ins. Co. v. Penske Truck Leasing Co., L.P.,* No. 20-55893, 2021 WL 4810642, at *2 (9th Cir. Oct. 15, 2021) ("[I]t would be improper for our court to rely upon this unpublished, uncitable case.").

Plaintiff's cases suggest no other result because they are factually distinguishable. In *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 684–90 (9th Cir. 2024), and the unpublished, nonprecedential decision in *Pandolfi v. AviaGames, Inc.,* 2025 WL 2463742 (9th Cir. 2025), the agreements created binding bellwether-style outcomes that effectively imposed class-like advantages for defendants without class-like protections for claimants. Section 9 of the Agreement contains none of those defects. It simply structures the intake of individual cases.

Nor does Plaintiff identify any provision that places him "at the mercy" of another claimant's case – an essential element to the unconscionability findings in *Heckman*. To

the contrary, Section 9 protects claimants rather than harms claimants by tolling limitations periods for all timely demands. (Ibrahim Decl., Ex. 1, at ¶ 9). As multiple courts have held when reviewing similar protocols, nothing about this staged-filing mechanism is substantively unconscionable. *See e.g., Jones,* 129 F.4th at 1182; *McGrath*, 2020 WL 6526129, at *10 & n.7.

In any event, Section 9 is expressly severable. If any staging feature were deemed unenforceable, arbitrations simply proceed in the ordinary course with fees assessed as cases advance and arbitrators are appointed. And as discussed *supra* under *Rent-A-Center* and *Holley-Gallegly*, such agreement-wide concerns must be presented to the arbitrator in the first instance unless Plaintiff shows that the fact of an arbitrator deciding arbitrability is itself unconscionable—which he has not tried to do, much less demonstrated in his Opposition. *See Holley-Gallegly,* 74 F.4th at 1002.

Finally, Plaintiff's attack on the MAD procedures is entirely speculative: he presents no other claimants and offers no basis to believe the procedures will ever be triggered. Simply put, the MAD Procedures are enforceable and do not render the Agreement unconscionable.

### 2. The Discovery Framework Is Not Unconscionable.

Plaintiff's attacks on the discovery provisions similarly misstate the facts and the law. Plaintiff *falsely* claims that the parties can only obtain more discovery if they mutually agree. But Plaintiff misleadingly omits that the Agreement expressly authorizes the arbitrator to expand discovery upon request: "[a]dditional discovery may be conducted by mutual stipulation*, and the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on the Arbitrator's determination whether additional discovery is warranted by the circumstances of a particular case*." *Id*. (emphasis added).[2] Courts have rejected unconscionability challenges

---

[2] The Agreement also incorporates the AAA Employment Rules, which charge arbitrators with managing any necessary discovery to ensure fairness for all parties. (Dkt. 18-1, Ibrahim Decl., at Ex. 1, ¶ 7).

to similar agreements that grant the arbitrator authority to expand discovery beyond the baseline standards in the agreement. *See, e.g.*, *Ramirez v. Charter Commc'ns, Inc*., 16 Cal. 5th 478, 504 (2023) (holding that "[a]llowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise post-formation" and that "giving the arbitrator authority to expand discovery based on Armendariz's requirement is one way the adequacy[-of-discovery] concern can be addressed."); *Steven Joseph v. Sea World LLC,* 2026 WL 40901, at *12 (S.D. Cal. Jan. 6, 2026) (same); *Tercero v. Sacramento Logistics LLC,* 2025 WL 43125, at *12 (E.D. Cal. Jan. 7, 2025) (same); *Vo v. Tech. Credit Union*, 108 Cal. App. 5th 632, 643 (2023).

As demonstrated, Plaintiff's procedural and substantive attacks fail. The Agreement was presented clearly, accepted with conspicuous notice, preserves individualized adjudication, contains severability that eliminates any arguable defect in ancillary staging, and vests the arbitrator with authority to ensure fair discovery. The Court should reject Plaintiff's challenges and enforce the Agreement according to its terms.

## III.  CONCLUSION

Because Plaintiff agreed to arbitrate, failed to challenge the delegation clause, and raised no valid unconscionability defense, the Court should compel individual arbitration in this case. *Rent-A-Center*, 561 U.S. at 68–72; *Henry Schein*, 586 U.S. at 67–69; *Caremark*, 43 F.4th at 1024. Consistent with the Agreement's court-reserved Class Waiver, the Court should dismiss Plaintiff's class allegations and then stay the remainder pending arbitration. *See* 9 U.S.C. § 3.

| | |
|---|---|
| Dated: January 16, 2026 | LITTLER MENDELSON, P.C.<br><br>/s/ Matthew Ruza<br>MATTHEW J. RUZA (*pro hac vice*)<br>YARA MROUEH (*pro hac vice*)<br>CHAD D. GREESON<br>Attorneys for Defendant<br>T-MOBILE USA, INC. |

LITTLER MENDELSON, P.C.
1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
925.932.2468

13   CASE NO. *25-cv-02933-CSK*
DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
AND DISMISS CLASS CLAIMS